UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PROS REVENUE MANAGEMENT, LP, § § | |
| Plaintiff, § § | |
| v. § | CIVIL ACTION NO. 12-cv-2137 |
| § | |
| TERRY WESLEY AYERS, § § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant Terry Wesley Ayers's ("Ayers") Motion to Dismiss First Amended Complaint for lack of personal jurisdiction. (Doc. No. 18.) After considering the motion, all responses thereto, and the applicable law, the Court finds that Ayers's Motion to Dismiss First Amended Complaint must be **DENIED**.

**I.    BACKGROUND**

This case is brought by Plaintiff Pros Revenue Management, LP ("PROS") against Ayers for fraud and breach of fiduciary duty. PROS is a limited partnership with its corporate headquarters and principal place of business in Houston, Texas. (Doc. No. 12, *hereinafter* "First Amended Complaint" ¶ 3.) PROS alleges that Ayers was continuously employed with another company, Dassault, while employed full-time with PROS.

In 2011, PROS used third-party recruiters to recruit an Executive Account Manager in California. (*Id.* at ¶ 8.) The recruiters identified Ayers as a candidate and in

1

March 2011, he accepted full-time employment with PROS as an Executive Account Manager. (*Id.*) On March 31, 2011, Patricia Miller ("Miller"), PROS's Human Resources Director at that time, sent Ayers a letter from her office in Houston, Texas to offer him the position. (*Id.*) Ayers signed and returned the offer letter ("Offer Letter"). (*Id.*)

The Offer Letter detailed the terms of Ayers's offer of full time employment with PROS, including the terms of his compensation package. (*Id.* at ¶ 9.) Ayers was to receive a semi-monthly salary of $5,208.34 plus expenses in exchange for his full-time employment. (*Id.*) He was also eligible to receive an additional incentive of $120,000 per year if certain performance goals were met. (*Id.*) The Offer Letter also identified the company policies that were conditions of Ayers's employment. For instance, Ayers was required to be a "full-time employee of the company" and "act in an ethical manner." (*Id.* at ¶ 10.) Attached to the Offer Letter was PROS's "Employee Confidentiality, Innovations and Proprietary Rights Assignment" ("Confidentiality Agreement") that Ayers was required to sign. (*Id. at* ¶ 12.) Ayers signed the Confidentiality Agreement in May 2011. (*Id.*) The Confidentiality Agreement stated that Ayers would not engage in any activities that create an actual or potential conflict of interest with PROS. (*Id.* at ¶ 13.) PROS claims that the Offer Letter and Confidentiality Agreement are governed by Texas law, and Ayers does not dispute this allegation. (*Id.* at ¶¶ 11, 14.)

PROS claims that at no point during Miller's interactions with Ayers did he reveal that he was still employed with Dassault. (*Id.* at ¶ 15.) PROS further claims that had it known Ayers was still employed with Dassault, it would have withdrawn the Offer Letter. (*Id.*)

In April 2011, Susan King ("King"), a member of PROs's Human Resources Department, arranged for Ayers's flight to attend orientation at PROS's headquarters in Houston, Texas. (*Id.* at ¶ 16.) Ayers was in Houston from May 4, 2011 until May 12, 2011. (*Id.*) During Ayers's time in Houston, he met with King to receive an overview of the company and to discuss PROS's policies, benefits, and time and expense reporting system. (*Id.* at ¶ 17.) At that time, Ayers was also given a tour of PROS's headquarters. (*Id.*) While he was in Houston, Ayers delivered to PROS orientation paperwork that had been sent to him previously and he had signed. (*Id.* at ¶ 18.) One of these documents was "PROS Holdings, Inc. Code of Business Conduct and Ethics." (*Id.* at ¶ 19.) This document included the following paragraph:

> You must avoid any situation in which your personal interests conflict or even appear to conflict with the Company's interests. You owe a duty to the Company not to compromise the Company's legitimate interests and to advance such interests when the opportunity to do so arises in the course of your employment.

The document also stated, "You may not compete with the Company or compromise its interests." (*Id.*)

King claims that she never observed Ayers performing any work for any other employer, including Dassault, during his time in Houston. (*Id.* at ¶ 21.) Rick Brown ("Brown") was Ayers's direct supervisor while he was employed with PROS. (*Id.* at ¶ 22.) Brown frequently interacted with Ayers by teleconference and in person at sales meetings, sales calls, and presentations or demonstrations. (*Id.* at ¶ 23.) Brown similarly did not observe Ayers performing work for any other employer while he was employed with PROS. (*Id.* at ¶ 24.) During Ayers's employment with PROS, he attended two sales meetings in Houston. (*Id.* at ¶ 25.) These meetings were in August 2011 and January 2012. (*Id.* at ¶ 26.) These meetings lasted approximately four and five days respectively.

(*Id.*) PROS's confidential and proprietary information, such as pricing information and sales data, was discussed at these meetings. (*Id.*) PROS claims that at no time during these sales meetings was it evident that Ayers was still working for Dassault. (*Id.* at ¶ 27.) Furthermore, PROS claims that Ayers did not communicate to anyone at PROS that he was still employed with Dassault while he was employed by PROS. (*Id.* at ¶ 28.) PROS claims that it would not have made confidential information available to Ayers had it known that he was continuing to work for Dassault, whom PROS claims is a competitor. (*Id.*)

Shortly after Ayers started working for PROS, in April 2011, Brown introduced Ayers to one of PROS's customers, Chevron Corporation ("Chevron"), because Ayers would be handling this account going forward. (*Id.* at ¶ 31.) During Ayers's first six months of employment, PROS claims that Ayers's pipeline of prospective sales was not growing. (*Id.* at ¶ 32.) At the time, PROS was not worried because it believed Ayers to be concentrating most of his efforts on the Chevron account. (*Id.*) By October 2011, PROS had submitted its proposal to Chevron, and PROS claims that Ayers should have had more time to spend on new sales opportunities. (*Id.* at ¶ 33.) However, in December 2011, Brown noticed that Ayers's sales pipeline still was not advancing. (*Id.* at ¶ 34.) Brown confronted Ayers about his pipeline not ramping up in January 2012, but Ayers assured Brown that he was sending letters and making calls to potential customers. (*Id.*)

Sometime later, Brown saw that Ayers's "LinkedIn" profile reflected that he was employed with Dassault. (*Id.* at ¶ 35.) When Brown confronted Ayers about this, Ayers said he would change the profile. (*Id.*) Brown then made a call to the recruiters PROS used to recruit Ayers to ask them if they thought that Ayers might be working somewhere

else. (*Id.* at ¶ 36.) PROS alleges that the recruiters said they did not think Ayers was otherwise employed based on Ayers's prior representations, but they would contact his last employer, Dassault. (*Id.*) When a recruiter called Dassault and asked for Ayers, he was transferred directly to Ayers's mobile phone. (*Id.*) PROS then contacted Dassault to verify Ayers's dates of employment, and Dassault verified that Ayers had been continuously employed with Dassault since 2008. (*Id.* at ¶ 38.) After PROS learned this information, it terminated Ayers's employment in March 2012.

PROS filed suit in District Court of Harris County, Texas, 189th Judicial District. Defendant removed to federal court based on diversity. PROS alleges claims of common law fraud and breach of fiduciary duty. Ayers then filed this motion to dismiss for lack of personal jurisdiction.

## II.     LEGAL STANDARD

Defendant moves the Court to dismiss Plaintiff's claims for lack of personal jurisdiction, governed by Federal Rule of Civil Procedure 12(b)(2). "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices. This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." *Luv N' care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (internal citations omitted).

A federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted in state court under applicable state law. *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989); *Rittenhouse v. Mabry*, 832 F.2d 1380,

1382 (5th Cir. 1987). Texas's long-arm statute affords Texas courts jurisdiction to the full extent permitted by the United States Constitution. *Televentures, Inc. v. Int'l Game Tech.*, 12 S.W.3d 900, 907 (Tex. App. 2000). "Thus, the only limitations on Texas courts in asserting personal jurisdiction over a nonresident defendant are those imposed by the due process clause of the Fourteenth Amendment." *Id.* (citing *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 413–14 (1984)).

Due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The purpose of the minimum contacts requirement is to (1) protect the defendant against the burdens of litigating at a distant or inconvenient forum, and (2) ensure that states do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

### III.   ANALYSIS

Ayers alleges that there are not sufficient grounds and minimum contacts to satisfy due process requirements for the exercise of personal jurisdiction over Ayers based on standards of "general", "limited", or "specific" jurisdiction, Fed. R. Civ. P. 12(b)(2). PROS does not argue general jurisdiction but asserts that this Court has specific jurisdiction over Ayers. Therefore the Court will discuss specific jurisdiction.

#### A.  Specific Jurisdiction

Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Freudensprung v.*

*Offshore Tech. Serv. Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). To decide specific jurisdiction, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir. 1988) (citations omitted). There must be a sufficient nexus between the nonresident defendant's contacts with the forum and the cause of action. *ICEE Distribs., Inc. v. J & J Snack Foods Corp.*, 325 F.3d 586, 591 (5th Cir. 2003); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). Purposeful availment of the forum state exists when "the defendant's conduct and connection with the forum state are such that [the defendant] should reasonably anticipate being haled into court there." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Foreseeability is important and the requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, ... or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 415; *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

The Fifth Circuit has set forth a test for specific jurisdiction. "Where the plaintiff alleges specific jurisdiction, as here, due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's

7

contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). Each of these factors will be discussed in turn.

### 1. Purposefully directed

Ayers claims that he did not purposefully avail himself or direct actions towards Texas. Rather, he argues that any contact with the state was "fortuitous", "attenuated", and/or based on the "unilateral activity of another party." (Doc. No. 18 p. 16.) Ayers claims that all three visits to Texas were caused by unilateral activity because PROS required Ayers to come to Texas. (*Id.*) The Court is unconvinced by this argument. Ayers signed an employment agreement with PROS, a Texas limited partnership with its principal place of business in Houston, Texas. By signing this agreement, Ayers could have been expected to maintain regular and frequent interactions with PROS in Texas. And indeed, Ayers did maintain regular contact with PROS in Texas. He interacted with PROS personnel in Texas and attended orientation and two sales meetings in Houston. (First Amend. Compl. ¶¶ 16, 26.) When a defendant has created continuing obligations between himself and forum state residents, then he "manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp.*, 471 U.S. at 476. Furthermore, Ayers signed the Confidentiality Agreement, which contained choice of law and mandatory venue provisions. (First Amend. Compl. ¶ 12.) The Confidentiality Agreement was sufficient to put Ayers on notice that he would be

amenable to suit in Texas. The Court concludes that Ayers purposefully directed actions towards the forum state.

### 2. Sufficient Nexus

Ayers claims there is no nexus between the alleged tortious conduct and the forum state of Texas. Ayers argues that PROS's First Amended Complaint states that PROS employers did not observe Ayers doing work for Dassault at any time while in Texas. Therefore, Ayers claims that there is no nexus for PROS's breach of fiduciary duty claim. (Doc. No. 18 p. 8.) Additionally, Ayers claims that there is no nexus for the fraud claim because Ayers signed the Offer Letter in California. (*Id.* at 10.) In fact, Ayers claims that any misrepresentations made regarding his employment occurred in California. (*Id.*)

The Fifth Circuit has held that "[a] single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). PROS claims that Ayers delivered his employment paperwork to PROS headquarters in Houston, Texas at the new hire orientation. These papers included agreements that PROS claims assert that Ayers cannot be employed by a competitor. While Ayers argues that any misrepresentation occurred in California, the Court disagrees. The Fifth Circuit held in *Wien Air Alaska, Inc. v. Brandt* that a German attorney's misrepresentations and omissions directed toward Texas, while limited, were sufficient contacts to confer personal jurisdiction over him in a Texas court. 195 F.3d 208, 209 (5th Cir. 1999). Ayers omitted information about his continued employment with Dassault, which PROS claims

9

is a competitor, each of the three times he was in Texas. Therefore, Ayers's omission is enough to establish sufficient contacts for personal jurisdiction.

### 3. Fair and Reasonable

PROS has made a *prima facie* showing that Ayers had sufficient minimum contacts with Texas for this Court to exercise specific jurisdiction over Ayers. The burden then shifts to Ayers to show that asserting such jurisdiction is not fair and reasonable. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 246 (5th Cir. 2008). Ayers fails to claim that jurisdiction is not fair or reasonable in his Motion to Dismiss.

The standards to be used in this inquiry are the "traditional notions of fair play and substantial justice." *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 323 (5th Cir. 1996). Specifically, the Fifth Circuit has held that the interests to balance in this determination are (1) the burden on the defendant having to litigate in the forum; (2) the forum state's interests in the lawsuit; (3) the plaintiff's interests in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. *Wien Air Alaska, Inc.*, 195 F.3d at 215. This is a high burden to meet. To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a "compelling case" against it. *Burger King Corp.*, 471 U.S. at 477 (1985). It is rare to prevail on the assertion that jurisdiction is unfair after minimum contacts have been shown. *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed.Cir. 1995); *Felch*, 92 F.3d at 323. Ayers has not adduced any cognizable argument that jurisdiction over him will not be fair

or reasonable, and therefore has not met his burden. As a result, this Court finds that it has specific jurisdiction over Ayers and has no reason not to exercise that jurisdiction.

### IV. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss must be **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 10th day of December, 2012.

_____
THE HONORABLE KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE